[No. 31775. Department Two. August 4, 1952.]

THE STATE OF WASHINGTON, *Respondent,* v. JESSE RICHARD WILLIS, *Appellant.*[1]

*Orvin H. Messegee,* for appellant.

*Charles O. Carroll* and *Thomas P. Keefe,* for respondent.

FINLEY, J.—This appeal is from (a) the denial of a motion in arrest of judgment or for a new trial; and (b) the judgment in a criminal action wherein appellant was found guilty of burglary in the second degree.

[1]Reported in 246 P. (2d) 827.

At about six o'clock a. m., on October 15, 1949, the Belmont Sundry Drug, in Seattle, was burglarized. A television set, nine or ten dollars in small change, and two one-dollar bills were taken. Entry unquestionably was effected by breaking the glass in the front door of the store. Apparently, the state contended that the burglar walked upon or through the shattered fragments of glass and stepped through the opening smashed in the door. The attention of several witnesses was attracted by the sound of crashing glass. There was partial daylight when the burglary occurred; the store was well lighted inside, and there was a bright street light outside of the store. Three witnesses testified to seeing a car parked in front of the drug store and watching it coast away down the hill. The consensus seemed to be that the car was dark colored, not black, but probably dark brown or dark green. These same witnesses described the car as a sedan, about a 1939 model, and with a strange-colored license plate. One witness said he saw the burglars, and that one came out of the store and got into a car; the other jumped out of the car and ran away. The witness did not identify appellant as one of the men.

At about 6:20 on the same morning, appellant was arrested approximately two or three miles from the scene of the burglary by a police officer. At the time, appellant was alone, driving a light green 1941 Ford sedan. The officer had followed him for several blocks, keeping the green sedan in view from a distance of half a block to a block, except for a period of four or five seconds when appellant turned east on Lane street from Corwin place, and into a dead-end street. Shortly after the arrest, another police car arrived, and in about ten minutes was followed by a tow truck. Appellant was taken to the police station in one of the patrol cars, and appellant's car was picked up by the tow truck.

The driver of the tow truck testified that he noticed a "shiny object" resembling a piece of finished wood as he was leaving the scene of the arrest; that, as soon as he had towed appellant's car to the storage garage, he returned to the scene of the arrest, arriving there about seven o'clock; that, at the place where he had seen the "shiny object," he

found the television set. It was about thirty or forty feet from the corner of Corwin place and Lane street, and about two or three feet from a fence which bordered the south side of Lane street. The fence was several feet back, or away from the curb line. The finish of the television set was damaged, there was a chip off of one corner, but it proved to be in perfect operating condition.

In appellant's possession, the police found approximately six dollars in small change and a one-dollar bill. Appellant said he had acquired this money in a poker game. At the trial, several defense witnesses testified concerning the alleged poker game and appellant's winnings. Apparently, no police investigation was made as to this aspect of appellant's story. Particles of glass were found in appellant's car and imbedded in the soles of his shoes. The state introduced no evidence to show that the particles of glass had actually come from the door of the store, although there was evidence indicating that a laboratory examination by the F. B. I. had been conducted apparently for that purpose. Appellant and his mother explained the presence of the particles of broken glass on his shoes and in the car by testifying that appellant had hauled scrap glass in his car about a week before his arrest. They testified that the mother uses large pieces of glass to cover her garden plants; that these pieces get broken, and she has her son haul the fragments away. This testimony was uncontradicted.

Appellant contends that the trial court erred in, (a) holding that the evidence was sufficient to go to the jury, and that it was sufficient to sustain the judgment; (b) refusing to instruct the jury that they could not consider certain testimony of a police officer as proof of the truth of a report from which he read; and (c) refusing to give appellant's proposed instruction No. 9.

This case has been tried three times in the superior court for King county. The question of the sufficiency of the evidence was before us previously in an appeal from the second trial. *State v. Willis*, 37 Wn. (2d) 274, 223 P. (2d) 453. There we held that, although the evidence to a great extent was circumstantial, it was sufficient upon

which to base a verdict of guilty. We have reviewed very carefully the statement of facts of the third trial, from which the present appeal is taken. It is our opinion in the present instance, as in the previous appeal, that there is some evidence, competent and substantial, tending to sustain the verdict.

During the cross-examination by appellant's counsel of one of the state's witnesses, A. R. Nelson, a detective in the Seattle police department, the following took place:

"Q At that time, you knew the report indicated that two men had burglarized the store, is that right? A I did not know that. Q The report indicated that, and you knew the report indicated that, did you not? A My report is a little conflicted. My report shows one white man, twenty-five, five foot ten, one hundred fifty pounds, slim build, dark clothing, that's all. Q That's your report, where did that come from? A That is the report from which I worked from through the Seattle Police Department. MR. MESSEGEE: I asked that the jury be instructed to disregard that as—for the purpose of showing the truth of what is contained in that, your Honor . . . THE COURT: I am merely asking, are you objecting to the answer that was given? MR. MESSEGEE: That's right. THE COURT: The objection is overruled. The answer will stand . . . MR. MESSEGEE: Did I ask your Honor to strike the answer as not being responsive to the question? THE COURT: You did not, but you may do that if you care to complete your record. MR. MESSEGEE: I ask your Honor to strike the answer. THE COURT: Motion denied. Exception allowed."

Appellant contends that these rulings of the trial court constituted prejudicial error. It is contended that the evidence was (1) hearsay, and (2) not responsive to the question propounded. In his brief, respondent *admits* that the answer of the officer was hearsay, but claims that appellant waived his right to assign error to the court's ruling thereon because he failed to object on the proper ground. Instead of phrasing his objection in the somewhat usual manner, and asking that the jury be instructed to disregard the statement as *hearsay,* appellant's counsel asked that it be disregarded "for the purpose of showing the truth of what is contained" in it.

Although appellant's objection did not contain or refer to the label "hearsay," nevertheless it went to the substance of the rule, specifically pointing out the circumstance in which the evidence would be inadmissible.

We again emphasize the fact that respondent concedes in his brief that the evidence in question was hearsay. However, without deciding this particular question, we pass on to another aspect of the case.

Appellant clearly raised the question as to whether the police officer's answer was responsive to the cross-examiner's question. We think it was not, and that the prejudicial effect of the questioned evidence is obvious. The description in the police report fits appellant. There is no showing how the description got into the report, who gave it to the police, when it was given, or when it was written into the report. No witness gave first-hand testimony of having seen a man of this description at the time of the burglary.

We think the failure to strike the evidence in question was prejudicial error constituting a sufficient basis for granting a new trial.

The remaining assignment of error concerns appellant's proposed instruction No. 9, relative to the possibility in this case of a presumption of fact, or guilt, based upon the fact of possession of recently stolen property.

This court has long adhered to the rule that proof of possession of stolen property does not raise a presumption of law which a defendant is required to rebut. *State v. Walters,* 7 Wash. 246, 34 Pac. 938, 1098; *State v. Portee,* 25 Wn. (2d) 246, 170 P. (2d) 326. In the *Walters* case, it was held (p. 251) that:

"Any presumption that may be drawn from such possession is a presumption of fact merely; in other words, it is only an inference that one fact may exist from the proof of another."

It is to be noted that an inference of one fact may be raised from *proof* of another. In other words, the inference of guilt may be raised from *proof* of possession of stolen property. In the case at bar, however, there is no direct *proof*

of actual possession of stolen property. There is circumstantial evidence tending to raise an inference that there was such possession. Therefore, in this case, the *inference* of guilt as to the charge of second degree burglary—breaking and entering—would be based upon an *inference* of possession rather than the proven fact of possession by the defendant of the stolen television set. The rule followed in most jurisdictions was approved in *Neel v. Henne,* 30 Wn. (2d) 24, 37, 190 P. (2d) 775, where we stated:

"Presumption may not be pyramided upon presumption, nor inference upon inference."

A ruling on the validity of appellant's proposed instruction No. 9 is not necessary in view of what we have said about the error relative to the police officer's testimony involving the police report. However, we feel that mention should be made of the problem concerning appellant's proposed instruction No. 9, and we wish to point out that, in our opinion, some instruction might just as well have been given advising the jury not to pyramid inference upon inference.

The order appealed from, denying the motion for a new trial, is reversed and set aside, and the cause is remanded for a new trial.

SCHWELLENBACH, C. J., HILL, HAMLEY, and OLSON, JJ., concur.